IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 18-00167 HG-03 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SHEENA STRONG, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE) (ECF No. 210)**

Defendant is currently incarcerated at the Bureau of Prisons' Residential Reentry Management Center in Dallas/Forth Worth, Texas with a projected release date of January 29, 2022.

Defendant has filed a Motion seeking immediate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Defendant seeks release due to the COVID-19 pandemic and the premature birth of her daughter while she was incarcerated.

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

Defendant's MOTION TO REDUCE SENTENCE UNDER THE FIRST STEP ACT (COMPASSIONATE RELEASE) (ECF No. 210) is **DENIED**.

**STANDARD OF REVIEW**

A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified

1

by a district court except in limited circumstances.  Dillon v. United States, 560 U.S. 817, 824-25 (2010).

On December 21, 2018, Congress passed the First Step Act of 2018.  PL 115-391, December 21, 2018, 132 Stat. 5194.  The First Step Act amended 18 U.S.C. § 3582(c), the statute governing the limited circumstances under which the trial court may evaluate a motion for reduction of sentence.

The First Step Act altered the statute in Section 3582(c)(1)(A) to allow a defendant to request the trial court reduce his sentence through a motion for compassionate release, but the statute requires the defendant to first present his request for release to the Bureau of Prisons.  18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment...after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   (I)  extraordinary and compelling reasons warrant such a reduction;
> ...
>        and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

## SECTION 3582(c)(1)(A) AS AMENDED BY THE FIRST STEP ACT

### A. Mandatory Procedural Requirement

The statute allows the Court to consider a defendant's request for compassionate release only after the defendant has first presented the request to the Bureau of Prisons ("BOP").  18 U.S.C. § 3582(c)(1)(A); United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

The Parties agree that Defendant has complied with the procedural requirement of 18 U.S.C. § 3582(c)(1)(A) and that the Court may consider the motion for compassionate release.

### B. Merits Of Defendant's Request For Compassionate Release

If a defendant has complied with the mandatory procedural requirement set forth in 18 U.S.C. § 3582(c)(1)(A), the District Court may reduce a term of imprisonment, including the grant of compassionate release, upon finding "extraordinary and compelling reasons" consistent with applicable policy statements of the Sentencing Commission.

The Sentencing Commission's policy statement is provided in United States Sentencing Guidelines § 1B1.13:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>    (1)(A)   Extraordinary and compelling reasons

|  |  |  |
|---|---|---|
|  |  | warrant the reduction; or |
|  | (B) | The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned; |
|  | (2) | The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and |
|  | (3) | The reduction is consistent with this policy statement. |

U.S.S.G. § 1B1.13.

If Defendant is not 70 years of age and was not sentenced pursuant to 18 U.S.C. § 3559(c), Defendant is only entitled to relief if she demonstrates:

(1) extraordinary and compelling reasons warrant a sentence reduction;

(2) she is not a danger to the safety of others or the community; and,

(3) any requested reduction is consistent with the policy statement.

United States v. Gill, 2020 WL 2084810, *2 (E.D. Cal. Apr. 30, 2020).

**C.   Extraordinary And Compelling Reasons**

The Sentencing Commission's Commentary Application Notes for Guideline § 1B1.13 provides the definition of "extraordinary and compelling reasons." The Court agrees with the majority of the district courts in the Ninth Circuit that have concluded that

4

Section 1B1.13 and its definition of "extraordinary and compelling reasons" applies to motions for compassionate release even though the sentencing guideline was not separately amended following the passage of the First Step Act.  See <u>Riley v. United States</u>, 2020 WL 1819838, *8 (W.D. Wash. Apr. 10, 2020) (collecting cases); <u>United States v. Shields</u>, 2019 WL 2359231, *4 (N.D. Cal. June 4, 2019).

Sentencing Guideline Section 1B1.13's Commentary Application Notes explain that extraordinary and compelling reasons exist when:

   (A) **Medical Condition of the Defendant.**–

      (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

      (ii) The defendant is—

         (I) suffering from a serious physical or medical condition,

         (II) suffering from a serious functional or cognitive impairment, or

         (III) experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

   (B) **Age of the Defendant.**–The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration

>    in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) **Family Circumstances.**–
>    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

The Court has the discretion to determine whether other extraordinary and compelling reasons exist, as stated in paragraph (D), when ruling on motions for compassionate release. United States v. Hernandez, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020).

## PROCEDURAL HISTORY

Starting in 2015, Defendant Sheena Strong, her mother Yvonne Caitano, her grandmother Marie Benevides, and Theresa Saltus engaged in a scheme to unlawfully distribute opiod medications for profit from the medical office of Dr. Ernest Bade. (Presentence Investigation Report at ¶¶ 1, 12, 18-29, ECF No. 155). The conspiracy also involved Defendant Caitano's 15 year-old minor adoptive daughter as well as others. (Id. at ¶¶ 27-

6

29).

By 2017, pharmacies in Hilo refused to fill prescriptions written by Dr. Bade out of a concern that they were fraudulent. (Id. at ¶ 17).  The defendants devised a scheme to fly to Maui once each month in order to fill fraudulent prescriptions written by Dr. Bade.  (Id. at ¶¶ 22, 24, 29).  During the scheme, the defendants filled the same prescription multiple times at different pharmacies on Maui.  (Id.)  The defendants used fake Maui addresses and provided false information to pharmacists. (Id.)

On October 24, 2018, Defendant Strong was charged along with Caitano, Benevides, Saltus, and Dr. Bade for their illegal prescription drug distribution scheme.  (Indictment, ECF No. 48).

Dr. Bade was found mentally incompetent to stand trial. (ECF No. 105).  A forensic psychiatrist appointed by the Court diagnosed Dr. Bade with Major Neurocognitive Disorder (Dementia), with notable cognitive deficits in memory, language, attention, motor skills, and social cognition.  (ECF No. 103-1 at pp. 27-28).  Dr. Bade had notable deficits in both short-term and long-term memory, spoke slowly, and frequently lost his train of thought and was unable to complete sentences.  (Id. at p. 28). Defendants Strong, Caitano, Benevides, and Saltus each pled guilty.  The minor child was not charged.

Defendant Strong was charged with two counts, as follows:

**Count 42**: From May 2015 through October 16, 2018, Defendant Sheena Strong and a co-defendant

7

>    knowingly and intentionally combined,
>    conspired, confederated, and agreed together
>    and with each other, and with others known
>    and unknown to the grand jury, to distribute
>    and possess with intent to distribute
>    Schedule II and IV controlled substances,
>    namely, Hydrocodone, Oxycodone, Morphine,
>    Fentanyl, Carisoprodol, and Alprazolam in
>    violation of 21 U.S.C. § 841(a)(1),
>    841(b)(1)(C), 841(b)(2), and 846;
>
> **Count 43:** From January 2017 through on or about October
>    16, 2018, Defendant Strong and three co-
>    defendants knowingly and intentionally
>    combined, conspired, confederated, and agreed
>    together and with each other, and with others
>    known and unknown to the grand jury, to
>    acquire and obtain possession of Schedule II
>    and IV controlled substances, namely,
>    Hydrocodone, Oxycodone, Morphone, Fentanyl,
>    Carisoprodol, and Alprazolam by
>    misrepresentation, fraud, forgery, deception,
>    and subterfuge, in violation of 21 U.S.C. §
>    843 and 846.

(Indictment, ECF No. 48).

On September 13, 2019, Defendant Strong pled guilty to Count 42 in the Indictment.  (ECF No. 119).

On January 16, 2020, the Court held a sentencing hearing. (ECF No. 162).

Defendant was sentenced to 27 months imprisonment followed by three years of supervised release.  (ECF No. 166).  The Court granted the Government's oral motion to dismiss Count 43 in the Indictment as to Defendant Strong.  (ECF No. 162).

The Court granted Defendant's request to self-surrender to the designated Bureau of Prisons facility and her mittimus was stayed until February 27, 2020.  (Id.)

On February 26, 2020, Defendant filed a Motion to Continue

8

her mittimus date by two weeks due to "emergent medical treatment." (ECF No. 181).

Defendant's Motion was granted, in part, and denied, in part, and Defendant's mittimus was continued to March 3, 2020. (ECF No. 182).

On March 3, 2020, Defendant began serving her sentence. (ECF No. 186).

On December 1, 2020, Defendant filed a MOTION FOR COMPASSIONATE RELEASE. (ECF No. 210).

On December 31, 2020, the Government filed its Response. (ECF No. 222).

On January 5, 2021, Defendant filed her Reply. (ECF No. 225).

On January 29, 2021, Defendant filed a Supplement. (ECF No. 234).

On February 10, 2021, Defendant filed a Second Supplement. (ECF No. 240).

The Court elects to decide the matter without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## **ANALYSIS**

Defendant Strong is 34 years old. Defendant is currently incarcerated at the Bureau of Prisons ("BOP") Residential Reentry Management Center in Dallas/Fort Worth, Texas. Defendant bears the burden to demonstrate that extraordinary and compelling

9

reasons exist that warrant immediate release from incarceration. United States v. Greenhut, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020).

Defendant seeks release for two reasons:

(1) Due to her own health concerns related to COVID-19; and,

(2) issues related to the care of her baby daughter who was born prematurely in August 2020, during Defendant's incarceration.

## I. DEFENDANT'S OWN MEDICAL CONDITION

A defendant's general concerns about potential exposure to COVID-19 while incarcerated do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence. United States v. Eberhart, 448 F.Supp.3d 1086, 1089-90 (N.D. Cal. Mar. 25, 2020); United States v. Carver,    F.Supp.3d   , 2020 WL 1892340, *3 (E.D. Wash. Apr. 8, 2020).

The Centers for Disease Control has identified certain categories of individuals that are at a higher risk for severe illness due to COVID-19.  The list includes people with conditions such as: chronic lung disease, moderate or serious asthma, serious heart conditions, obesity, chronic kidney disease, liver disease, diabetes, or individuals who are immunocompromised.  See United States v. Jones, Crim. No. 13-00860 LEK-03, 2020 WL 2331678, *5 (D. Haw. May 11, 2020).

### A. Current Centers For Disease Control Standards And Defendant's Medical Concerns

The Centers for Disease Control ("CDC") has explained that, as of March 17, 2021, people with certain underlying medical conditions are at increased risk for severe illness from COVID-19, including Type 2 diabetes and obesity.  (CDC Coronavirus Disease 2019 (COVID-19) Website, available at http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC AA refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, last visited 3/17/21).

The CDC has also stated that individuals "might be at an increased risk" for severe illness from COVID-19 when suffering from conditions including asthma.  (Id.)

Defendant alleges that she suffers from Type 2 diabetes, asthma, and obesity.

### B. Medical Conclusion

Defendant is 34 years old.  The CDC recognizes that the risk of developing severe illness from COVID-19 increases with age. Those 65 years of age or older are at increased risk and those 85 years and older at the greatest risk.  (https://www.cdc.gov/coronavirus2019-ncov/need-extra- precautions/ older-adults.html, last visited 3/17/21).  Defendant's age does not place her in a category of increased risk of complications due to COVID-19.

Defendant's medical records reflect that she has been diagnosed with Type 2 diabetes, obesity, fibromyaglia, and asthma. (Def.'s BOP Medical Records at p. 274, attached as Ex. D to Def.'s Motion, ECF No. 217). Defendant's medical records reflect that her conditions have been managed while she has been incarcerated. Defendant has been prescribed Albuterol Sulfate, an Albuterol inhaler, and a Budesonide/Fortomerol inhaler for her asthmatic condition. (Id.) She is prescribed Ibuprofen for fibromyalgia. (Id.) She has received diet counseling for her obesity and diabetes conditions. (Id. at pp. 171, 274-75).

The record demonstrates that Defendant has received and continues to receive appropriate medical care by the BOP. Defendant received extensive treatment during her pregnancy which she alleges she did not know about until after she was incarcerated on March 3, 2020.

In the one year that Defendant has been incarcerated, she has not established a basis for compassionate release based on her own medical issues. Defendant is housed at a Residential Reentry Management Center rather than a prison facility and has been provided with appropriate treatment. Defendant has been prescribed various medications to treat her medical conditions and continues to have access to medical care. Conditions that can be managed in prison are not a basis for compassionate release. United States v. Kazanowski, Crim. No. 15-00459 DKW-05, 2020 WL 3578310, *9 (D. Haw. July 1, 2020) (citing U.S.S.G. § 1B1.13 cmt. n.1(A)).

The increased availability of vaccines and lower rates of COVID-19 infection also weigh against compassionate release due to Defendant's own medical conditions.  Defendant has not indicated whether she has been vaccinated or whether she is scheduled to receive a vaccination based on her health concerns.

## II. Section 3553(a) Factors And Defendant's History and Characteristics

### A. History and Characteristics

In order to be eligible for compassionate release, Defendant must establish that release is appropriate pursuant to the factors set forth in 18 U.S.C. § 3553(a) and that she is not a danger to the safety of others or the community.  18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(2).

The Section 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed.

Defendant is currently serving a 27-month sentence for her involvement in a conspiracy to distribute large quantities of opioids and other highly addictive controlled prescription medications.  Defendant worked at a medical clinic in Hilo where she conspired with others, including her own family members, to engage in drug trafficking.  (Presentence Report at ¶ 20, ECF No. 155).  Defendant's actions from May 2015 through October 2018 included a conspiracy that involved a child under 18 years old and a person over 65 years old of ongoing drug crimes.  (Id. at

13

¶¶ 19, 27; Indictment at ¶ 26, ECF No. 48).

The Presentence Report reflects that Defendant Strong was held individually responsible for trafficking 53,994.6 milligrams of Oxycodone (163,620 total milligrams), 5,940.0 milligrams of Hydrocodone (18,000 total milligrams), 0.74 milligrams of Fentanyl (2.25 total milligrams), and 668.25 milligrams of Morphine (2,025 total milligrams).  (Presentence Report at ¶ 46, ECF No. 155).

Defendant was in Criminal History Category I and was subject to a sentencing guideline range of 37-46 months imprisonment. The Court granted a variance and sentenced Defendant to a total of 27 months imprisonment.

### B.    Portion Of Sentence Served

A review of the caselaw demonstrates that the portion of the sentence already served by the defendant is a necessary factor for the Court to consider in evaluating compassionate release. United States v. Connell,    F.Supp.3d.   , 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020).  The amount of time served of the originally imposed sentence must be considered pursuant to Section 3553(a) to ensure that the amount of time adequately reflects the seriousness of the offense, deters criminal conduct, and protects the public.  United States v. Barber, 466 F.3d 1127, 1133 n.9 (D. Ore. 2020).

At the time she filed her Motion with the assistance of counsel in December 2020, Defendant had served approximately 9

months of her 27-month sentence.

### C.     Appropriateness of Immediate Release

The Court finds that the nature and circumstances of Defendant's offense weigh in favor of her 27-month sentence. Defendant pled guilty to trafficking in highly addictive opiod medications.  Defendant acted as an unpaid employee of a medical clinic to engage in the drug trafficking conspiracy.

Defendant served approximately 33% of her 27-month sentence when she filed her motion.  Defendant's immediate release would not adequately reflect the seriousness of the offense, would not properly deter similar criminal conduct, and would not protect the public.  The factors in Section 3553(a) do not support the immediate release of the Defendant.

### III. Summary Of Medical Conclusion And Section 3553(a) Factors

Defendant has not established a basis for compassionate release because of her own medical issues.  The record does not demonstrate that she is suffering from a terminal health condition or a condition that substantially interferes with her ability to provide self-care while incarcerated.  Defendant has been able to manage her medical conditions while incarcerated. The record demonstrates that Defendant has received and continues to receive appropriate medical care while incarcerated.

Defendant has not established that her immediate release is

warranted pursuant to the Section 3553(a) factors.

**IV.  COMPASSIONATE RELEASE TO CARE FOR DEFENDANT'S DAUGHTER**

Defendant Strong also seeks compassionate release due to the medical condition of her baby who was born while Defendant was incarcerated.

Pursuant to Sentencing Guideline Section 1B1.13's Commentary Application Notes C, Family Circumstances may provide a basis to establish "extraordinary and compelling reasons" for compassionate release.  Specifically, compassionate release may be appropriate when the defendant would be the only available caregiver for the defendant's minor child.  U.S.S.G. § 1B1.13 cmt. n.1(C); <u>United States v. Bolden</u>, 2020 WL 4286820, *4-*5 (W.D. Wash. July 27, 2020).

On April 30, 2020, Defendant Strong was released from a BOP medical facility to a BOP Residential Reentry Management Center in Dallas/Fort Worth into the Mothers and Infants Together ("MINT") Program.  MINT is a residential program promoting bonding skills for pregnant inmates.

In August 2020, Defendant's child was born prematurely at approximately 26 weeks.  (Letter from child's physician, attached as Ex. B to Def.'s Second Supplement, ECF No. 243-2).  According to the child's physician, the child requires 24 hour supervision, receives intermittent oxygen support and is under the care of an extensive subspecialty team including cardiology, pulmonology,

and gasteroenterology, among others.  (Id.)

Defendant Strong remains in the MINT program.  Defendant Strong resides at the Residential Reentry Center and her child remains hospitalized at the Neonatal Intensive Care Unit ("NICU") at the nearby hospital.  Defendant Strong is able to visit the child daily, to provide breast milk, and to bond with the child through the MINT program.  Defendant also takes courses on parenthood, family, and community life to assist her through the MINT program.

Defendant's child remains in the NICU, is being treated with various medications, and is being seen by an extensive team of subspecialty physicians and providers.  Defendant Strong has been granted an extension to remain in the MINT program until at least July 7, 2021.

Defendant has not established that compassionate release is appropriate at this time.  The ongoing medical needs of her child are being met.  The record demonstrates that the child is receiving extensive medical care and that Defendant Strong is able to visit the child daily through the MINT program.  In the future, Defendant may file a new motion for compassionate release, but at this time, Defendant has not demonstrated that compassionate release is appropriate.

//
//
//

**CONCLUSION**

Defendant's Motion To Reduce Sentence Under The First Step Act (COMPASSIONATE RELEASE) (ECF No. 210) is **DENIED**.

IT IS SO ORDERED.

Dated: March 17, 2021, Honolulu, Hawaii.



Helen Gillmor
United States District Judge